Adrien J. Espinoza #212698
_Name and Prisoner/Booking Number_

ASPC-Florence / Kasson
_Place of Confinement_

POBox 8200
_Mailing Address_

Florence, Arizona 85132-8200
_City, State, Zip Code_

(Failure to notify the Court of your change of address may result in dismissal of this action.)

```
                                    FILED ___        LODGED
                                    RECEIVED ___     COPY
                                    ┌──────────────────┐
                                    │   OCT 2 7 2017   │
                                    └──────────────────┘
                                    CLERK U S DISTRICT COURT
                                    DISTRICT OF ARIZONA
                                BY KA                    DEPUTY
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Adrien Joshua Espinoza
(Full Name of Plaintiff)   Plaintiff,

vs.

(1) Charles L. Ryan
(Full Name of Defendant)

(2) C.O.II S.Mangan #3112

(3) C.O.II T. Williams

(4) Captain Sieger
                          Defendant(s).
☑ Check if there are additional Defendants and attach page 1-A listing them.

)
)
)
)
)
)
)
)   CASE NO. CV-17-3983-PHX-ROS-JFM
)          (To be supplied by the Clerk)
)
)   Jury Trial Demanded
)   **CIVIL RIGHTS COMPLAINT**
)   **BY A PRISONER**
)
)   ☑ Original Complaint
)   ☐ First Amended Complaint
)   ☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).
    ☐ Other: N/A

2.  Institution/city where violation occurred: Arizona Dept. of Corrections/Florence, AZ.

Revised 3/9/07                              1

**550/555**

Defendants (Cont'd.)

5. Lt. Quintero
6. Sgt. Ramos
7. COII G. Osler #1688
8. Sgt. D. McClincy
9. P.P.S. II J. Lyons
10. D.W. Montano, Ruben
11. Warden Curran, Kevin
12. Does 1 to 20, inclusive
13. Captain Curtis
14. Captain Jaeger
15. Captain Franco
16. Lt. Knight
17. Captain Rodrick Williams

Sueing all defendants in their individual and official capacities.

1 - A

## B. DEFENDANTS

1. Name of first Defendant: _Charles L. Ryan_ . The first Defendant is employed as:
_Director_ at _Arizona Department of Corrections_ .
(Position and Title)                    (Institution)

2. Name of second Defendant: _(M(rs) S. Mangan_ . The second Defendant is employed as:
_Publication Review/MailRoom , C.O. II_ at _ASPC-Florence_ .
(Position and Title)                    (Institution)

3. Name of third Defendant: _(Mrs) T. Williams_ . The third Defendant is employed as:
_Kasson Unit MailRoom, C.O. II_ at _ASPC-Florence / Kasson Unit_ .
(Position and Title)                    (Institution)

4. Name of fourth Defendant: _(Mr.) Sieger_ . The fourth Defendant is employed as:
_Supervisor of Publication Review staff, Captain_ at _ASPC-Florence_ .
(Position and Title)                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☑ Yes   ☐ No

2. If yes, how many lawsuits have you filed? _7_ . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _Espinoza_ v. _Richter_
      2. Court and case number: _USCA9 16-15964_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Appeal pending_

   b. Second prior lawsuit:
      1. Parties: _Espinoza_ v. _Stewart_
      2. Court and case number: _USCA9 16-16058_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Appeal pending_

   c. Third prior lawsuit:
      1. Parties: _Espinoza_ v. _Hull_
      2. Court and case number: _USDC CV-14-0007_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Dismissed by SCOTUS_

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

B. Defendants (Cont'd.)

5. Quintero
Supervisor of Publication Review staff, Lieutenant   at ASPC-Florence

6. Ramos
Supervisor of Publication Review staff, Sergeant   at ASPC-Florence

7. G. Osler
Publication Review staff, C.O.II           at ASPC-Florence

8. D. McClincy
Supervisor of Publication Review staff/MailRoom, Sergeant at ASPC-Florence

9. J. Lyons (or John Doe 21)
Offender Operations, PPS II           at Central Office

10. Ruben Montano
Deputy Warden           at ASPC-Florence/Kasson Unit

11. Kevin Curran
Warden           at ASPC-Florence

12. Does 1-20
Complex/Unit Publication Review staff   at ASPC-Florence and ASPC-Eyman
                                         and all ASP Complexes statewide

13. Curtis
Mail Room/Publication Review Captain; Disciplinary Hearing Officer   at ASPC-Florence

14. Jaeger
Disciplinary Hearing Officer, Captain       at ASPC-

15. Franco
Disciplinary Hearing Officer, Captain       at ASPC-Tucson

16. Knight
Kasson Supervisor, Lieutenant           at ASPC-Florence/Kasson Unit

17. Rodrick Williams
Kasson Chief of Security, Captain       at ASPC-Florence/Kasson Unit

2-A

C. Previous Lawsuits (Cont'd)

d. 1. Espinoza v. Allen
   2. CV-14-2295
   3. Appealing

e. 1. Espinoza v. Irby
   2. 16-17230
   3. Appeal pending

f. 1. Espinoza v. Stephens
   2. CV-16-561
   3. Case pending

g. 1. Espinoza v. Irby ("Irby II")
   2. CV-17-236
   3. Case pending

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: *First Amendment to U.S. Constitution, Freedom of Association, Free Speech, Any Other Court Deems Appropriate. 14th Amendment to U.S. Constitution*

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☑ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   *See: 3-A*

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   *Constitutional Injury. The acts described above constitute violations of Plaintiff's rights under the First Amendment to the United States Constitution through 42 U.S.C. §1983, and have caused and will continue to cause damages and irreparable injury to Plaintiff.*

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☑ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count I?   ☑ Yes   ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?   ☑ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. *N/A*

3

### 3. Supporting Facts. (Count I)

Defendants 1-13 engage in the unconstitutional act of excluding and contrabanding incoming magazines subscribed to by prisoners, including plaintiff. Defendants 1-13 ("Defendants") base their exclusions off of the prison's revised (April, 2016) Inmate Mail policy, D.O. 914. They claim the magazines' contents contain any of the policy's various prohibited content, including nudity, the encouragement of sexual or hostile behaviors, promotion/ instructions for brewing alcohol, manufacturing/cultivation of drugs, narcotics, poisons. They admit their exclusions are not "detrimental to the safe, secure, and orderly operation of the prison." Though defendants claim the contents contain nudity, the magazines do not. Defendants exclude all publications, pictures, catalogs, etc., that contain "Content... that may, could reasonably be anticipated to, could reasonably result in, is or appears to be intended to cause or encourage sexual excitement or arousal... or that depicts sexually suggestive settings, poses or attire..." Defendants exclude such content though there exists no legitimate penological interest in doing so. Defendants can produce no evidence that proves any negative results would incur upon the prison, its staff or inmates (actual evidence, not just speculation). Magazines that plaintiff has personally had excluded include: ESPN (2016 Body Issue), Esquire, Cosmopolitan, Elle, Allure, The Philadelphia Trumpet, Rolling Stone, Vogue, The Trumpet. Other publications excluded include: Fire To The Prisons (published by East Bay Prisoner Support), #12; 2 Catalog

pages (#18 and #19) from Fiya Girls (in Houston, TX); 2 photos from Fiya Girls.

Though defendants allege that personal correspondence is not subject to Publication Review or exclusion, their exclusion of 4 of plaintiff's personal incoming correspondences indicate otherwise. Defendant 7, under the direction and supervision of defendants 4, 5 and 6, excluded two personal correspondences ("Printed story, Chapters 1-4"; and "Homosexual sex stories Chapter 5-9" (these were titles rendered by defendant 7)). Defendant 3 excluded/contrabanded 2 personal correspondences as "sexually explicit", merely because of their text.

The core of this Civil Rights Complaint is that defendants are violating prisoners' First Amendment right to Freedom of Association by precluding them from receiving the contents of numerous magazines. And they have absolutely no basis for doing so. Though they had the option to assert it, never did any of the defendants assert that the contents they excluded would be detrimental to the safe, secure and orderly operation of the prison or its staff or inmates. The exclusion/restrictions defendants are imposing on plaintiff prisoners have no valid, rational connection to legitimate penological interests not related to the content of the ideas. The First Amendment protects free speech and a free press. Government regulations

3-B

that allow the state or its employees to discriminate on the basis of the content or views expressed are contrary to the First Amendment. The First Amendment means that government has no power to restrict expression because of its message, subject matter or content. In this case, that is precisely what defendants are doing. Defendants' exclusions do not further an important or substantial government interest unrelated to the suppression of expression. Defendants conjure up false pretexts for exclusions, alleging nudity when none exists. Defendants 1, 4-6, 9 permit these unconstitutional actions, while the rest of the defendants carry out the unconstitutional acts of excluding content/magazines/letters (including Does 1-20).

3-C

## COUNT II

1. State the constitutional or other federal civil right that was violated: First Amendment to U.S. Constitution, Freedom of Association, Free Speech, Any Other Court Deems Appropriate, 14th Amendment to U.S. Constitution.

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.

☐ Basic necessities    ☑ Mail    ☐ Access to the court    ☐ Medical care

☐ Disciplinary proceedings    ☐ Property    ☐ Exercise of religion    ☐ Retaliation

☐ Excessive force by an officer    ☐ Threat to safety    ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendants 1-13 engage in the unconstitutional act of excluding, contrabanding, and precluding prisoners from receiving through mail magazines, photos, publications, and other mailings that contain nudity and porn. Defendants 1-13 ("Defendants") do so though there exists no legitimate penological interest in doing so. They can provide no evidence (other than mere speculation, possibly) that allowing nude images/porn would be detrimental to the safe, secure and orderly operation of the facility. Plaintiff asserts defendants will advance several justifications for banning pornography, but those justifications are based more upon impression than data. Defendants deny plaintiff and prisoners access to all adult magazines depicting naked or scantily clad women (or men), which is a violation of his First Amendment rights, as those rights include access to, as well as creation and dissemination of, oral and written communication including magazines. Defendants even go as far as to preclude prisoners from accessing sexually suggestive content in the form of text. The prison's policy is ineffectual - and it is costly. Staff is deflected to skimming boatloads of pornographic magazines, catalogs, photos and other mailings. Prisoners are denied access to reading material that would lighten, slightly, at the very least, the burden of imprisonment in a maximum-security prison (where plaintiff is housed) and other security level prisons and might reduce (rather than increase) disciplinary problems at the prison. There is little or no existing evidence connecting pornography.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Constitutional injury. Mental anguish. Extreme stress.

_____

_____

5. **Administrative Remedies.**

a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☑ Yes    ☐ No

b. Did you submit a request for administrative relief on Count II?    ☑ Yes    ☐ No

c. Did you appeal your request for relief on Count II to the highest level?    ☑ Yes    ☐ No

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. N/A

with an increase in violence or mistreatment of women (or men) staff in prisons

Plaintiff has been incarcerated since 2005, and in ADOC custody since 2006. Never once has he seen or heard about an inmate on inmate fight arising from anything to do with pornography. He has never witnessed or heard of any prison staff, male or female, being attacked, objectified or harassed by inmates due to pornography. He has never witnessed or heard about inmates engaging in black-market trading for the publications and photographs, though he has seen it given away, which is allowed by policy (giving away). (Pornography was allowed until 2010.) He has never seen any violence arise due to porn. Plaintiff can provide the court with dozens of declarations from other inmates attesting to the same. The prison's, and defendants' regulation impinges on inmates' constitutional rights and it is not valid because the regulation (of denying access to sexually explicit material and porn) is not reasonably related to legitimate penological purposes.

It appears defendants deny prisoners access to pornography simply out of sadism, to preclude prisoners from reading or browsing anything that might give them pleasure or arousal. And that is not justifiable. Adult magazines should be permitted, as should nude, scantily clad, and pornographic photos and sexually suggestive content in text form. Prisoners retain their right of Freedom of Association and Free Speech, including subscribing to, receiving and reading and reviewing magazines,

4-A

their content and articles and photos. The named defendants actively infringe upon those rights by creating, implementing and enforcing policies that ban all adult magazines, books, photos, drawings, text, etc.

Defendants 1 and 9 created and implement this unconstitutional policy. Defendants 2-8 and 12-13 are mail room employees and enforce this unconstitutional policy. Defendants 10-11 order mail room employees to enforce this unconstitutional policy.

4-B

## COUNT III

1. State the constitutional or other federal civil right that was violated: First Amendment to U.S. Constitution, Freedom of Association, Free Speech, 8th Amendment U.S. Constitution, 14th Amendment to U.S. Constitution, Any other the court deems appropriate.

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

   ☐ Basic necessities    ☑ Mail    ☐ Access to the court    ☐ Medical care
   ☐ Disciplinary proceedings    ☐ Property    ☐ Exercise of religion    ☐ Retaliation
   ☐ Excessive force by an officer    ☐ Threat to safety    ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Defendants 1 - 13 ("Defendants") deny plaintiff's and prisoners' rights to Freedom of Association by precluding prisoners from "receiving mail from a group, company, organization, ect. that is primarily penpal oriented. The ADOC's policy restricts inmates from receiving mail from penpal groups, though it has no legitimate penological interest in doing so. This policy, D.O. 914, was created, and is enforced, unconstitutionally. Plaintiff has personally been aggrieved of this policy when prison officials excluded and contrabanded mail from a number of penpal groups. It is well known that it is therapeutic and beneficial for prisoners to correspond with friends, family members and people in the free world, yet the ADOC precludes inmates/plaintiff from doing so with no legitimate, legal or justifiable reason. This policy is sadistical, senseless and unconstitutional. Writing letters and corresponding to free world civilians has proven to lower recidivism, be therapeutic and to be an overall positive passtime for prisoners. ADC mail rooms regularly reject/return to sender/contraband mail that is sent from any penpal service, group, company, etc. Defendant Ryan created and enforces this policy. Defendants 2 - 13 enforce this policy by contrabanding, rejecting or returning to sender mail from penpal groups, or they order their subordinates to.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   Constitutional injury. Mental anguish. Extreme stress.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☑ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count III?    ☑ Yes   ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?    ☑ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. N/A

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

Count III (cont'd)

do so. Defendants 2-8 and 12-13 are mail room employees who carry this policy out. Defendant 9 created and implements this policy. Defendants 10-11 order mail room employees to enforce this policy.

Count IV

1. Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution, any other the Court deems appropriate.

2. Disciplinary proceedings

3. Supporting Facts

Defendants 13-15, 17, who acted as Disciplinary Hearing Officers during plaintiff's disciplinary proceedings, violated plaintiff's rights to Due Process and Equal Protection by refusing to allow plaintiff to submit verbal and written statements, call witnesses, present evidence, and/or review or be notified of evidence used against him during his hearings, which has resulted in plaintiff being deprived of liberty in the amount of approximately four years good-time credits. All of these defendants refused to provide plaintiff with a hearing before taking his good-time credit as sanctions because they found him guilty just seconds into the hearing, while plaintiff was only beginning to give his testimony. ADC officials have a common practice of conducting farcical hearings in this manner. Plaintiff received the Disciplinary Reports while in maximum custody or while in detention (for non-punitive reasons). Plaintiff presented clear and convincing edivence or testimony all of these infractions, which showed that it was more probable that he did not commit the infraction, yet he was still found guilty. Defendants herein placed plaintiff in such predicaments that he was unable to gather evidence, then denied him requests for a Staff Assistance even though they are used for the purpose of gathering evidence. When plaintiff submitted Witness Statement request, they were frequently denied as irrelevant, even though they were relevant and pertinent to the case and necessary for his defense.

Count IV (cont'd)

Before plaintiff suffered these injuries, it should be noted that he'd lost only a matter of a few weeks of good-time credits, which was before he was placed in detention and maximum custody, where he was severely targeted with disciplinary write-ups for all of his complaints and grievances he submitted while there. Plaintiff believes he can demonstrate to the Court and a jury that his Due Process rights were blatantly ignored and violated and that ADC officials commonly do this during inmate hearings. Plaintiff will demonstrate cruel and unusual punishment (the taking of his good-time credits). He will prove defendants 13-15 and 17 deprived plaintiff of Due Process, which resulted in a loss of liberty.

5-C

Count V

1. First and Fourteenth Amendments to the United States Constitution, Freedom of Association, Free Speech, Any other rights the Court deems applicable.

2. Mail

3. Supporting facts.

From January 26, 2017 to present date defendants have prohibited plaintiff from receiving any publications (books and magazines). I. Williams asked Complex Mail Room staff to return to sender all incoming publications. Mail Room supervisor Sgt. Ramos gave the order to return to sender all magazines and books, and that order was subsequently supported by Curran, Montano, Curtis, Ryan, Sieger, Quintero, Lyons (or his equivalent). Plaintiff subscribes to 15 paid magazines, including: Vogue, Teen Vogue, Glamour, Elle, Cosmopolitan, Harper's Bazaar, Redbook, Men's Fitness, Esquire, Allure, Wired, Rolling Stone, Us Weekly, ESPN, and Prison Legal News (PLN). Defendants have banned plaintiff from receiving any of these magazine's issues, with the exception of a total of 4 issues. Plaintiff also subscribes to several free magazines and newsletters, including: Under Lock & Key, Black and Pink News, UltraViolet, Turning The Tide, Slingshot, The Abolitionist, The Word is Out, Prison Health News, The Philadelphia Trumpet, Royal Vision Reaching Out (NA), The Incarcerated Worker, Prisoner Express, The Sun, Dharma Friends, Cell Door Magazine, Good-Newsletter, Action Update. Defendants have banned plaintiff from receiving any of these publications' issues, with the exception of a total of 5 issues.

Plaintiff, a prisoner rights advocate who is a member of numerous community prisoner rights committees, would regularly file appeals when Complex Publication Review staff defendants would "exclude" (censor) his

COUNT V (cont'd)

publications, asserting his First Amendment rights when doing so. In January, 2017, when plaintiff notified defendants Ryan, Mangan, Williams, Sieger, Quintero, Ramos, Osler, Montano and Curran that they were illegally excluding his publications on false pretenses and that that might lead to a lawsuit if they did not cease, these defendants enforced a ban on all incoming publications to plaintiff. Plaintiff has demonstrated several times that he is in compliance with the DOC's policies and should be permitted to receive publications, but defendants Ramos, Quintero, Sieger, Montano, Curran, Osler, Williams, Curtis Mangan, and Ryan will not lift the ban.

Ryan is the Director of ADC, is aware of this problem but has affirmed Ramos's order to return to sender/censor all publications, as has Curran, Montano, Quintero, Sieger, and Curtis.

Plaintiff, an avid reader and self-educator, has also been precluded from receiving any books in this same time frame. These defendants have ordered, or affirmed the order, since Jan., 2017. Plaintiff had been appealing numerous book exclusions and was attempting to get defendants to allow him to receive a learning sign-language book so he could communicate with his hearing-impaired infant niece, who has Down Syndrome. Plaintiff sent defendants similar notices regarding illegal exclusions and warnings of a lawsuit, and then the ban on incoming books commenced. Plaintiff has received letters from booksellers stating the DOC rejected their packages.

Additionally, defendants did not provide plaintiff a chance to appeal or in any way challenge their prohibition until over 3 months had passed. They did not notify plaintiff of this ban until it was casually mentioned in a grievance Response by Montano. Until then, plaintiff was left to wonder, frustrated, why his publications were not being

5-E

Count I (cont'd)

delivered to him.

    Defendants refuse to lift this ban. They refuse to attempt a resolution. Instead, he was told by Sgt. Dutro that MailRoom said they're "fed up with my appeals and grievances and threats to file suit", to "quit filing them" and "just sue already." Plaintiff has written Inmate Letters to defendants, to which they refuse to respond. He has written a letter to Postmaster General Ms. Megan Brennan seeking intervention and resolution. (He is awaiting a response from Brennan/USPS.) Plaintiff has been diligent in trying to resolve this problem, and his efforts have been in good faith.

    Defendants do not notify plaintiff when they return to sender publications, despite being ordered to do so by Appeals Officer Cheryl Dossett. Plaintiff has confirmed the publications are still being sent to him and being rejected by MailRoom staff.

4. Injury. Constitutional injury. See also: Count I, Injury.

5. Administrative Remedies:
    a. yes
    b. yes
    c. yes
    d. N/A

Count VI

1. Eitth and Fourteenth Amendments to the U.S. Constitution; any other the Court deems appropriate.

2. Unsanitary and dangerous environmental conditions.

3. Supporting Facts.

From 9/7/2016 to 9/22/2016 and 11/14/2016 to present, defendants (described below) have kept plaintiff confined to cells and pods that are extremely infested with cockroaches. They have steadfastly refused to administer proper pesticides to remedy the problem. Every cell plaintiff has been in has been severely infested. Roaches crawl on the floors, walls, ceiling, fixtures, personal property, in legal boxes, on clothing, even on food. Roaches crawl on him while in bed, while sleeping. The infestation is so severe that it has caused serious mental health problems for plaintiff, and has worsened his already existing mental health conditions. The infestation has caused plaintiff to have visual and physical hallucinations whereby he often feels and sees in his peripheral vision cockroaches that are not really there; he has become unable to tell, initially, which roaches are real and which are hallucinations. Plaintiff has discussed with Corizon mental health staff numerous times his problems, but they tell him they are unable to provide any kind of treatment for his increasing hallucinations and that his problem is a "security issue," one that mental health cannot address. Defendants refuse to order exterminators to spray pesticides in the pods, cells and plumbing chases, where the cockroach infestation is greatest. Instead, they have sprayed only the wing hallways, where it is mopped up the same day. When plaintiff opens one of his

Count VI (cont'd)

legal boxes, four of which he is allowed to keep in his cell, several
roaches come scurrying our and run into the folders to
evade. When plaintiff arrived to Kasson and was assigned to
cell # 1-B-13, where he is now, the c.o. began emptying the
cell of trash before plaintiff entered. When the c.o. tore
off sheets of paper covering the four-foot flourescent light,
over one hundred cockroaches went raining down on the
c.o.'s head and shoulders. Plaintiff, who'd already suffered from
a phobia of cockroaches, refused to enter the cell until it
was cleaned. Hours later, when he finally entered the cell, he
learned the full extent of the infestation. While the presence of
the infestation is always noticable, it is especially prevalent
during night time hours, and reaches its maximum height
between approximately 10:00 pm and 5:00 am. At any given time
there are at least a few dozen roaches in plaintiff's cell,
though he takes careful measures to clean it daily. There are
cracks and crevices in the cell where roaches live and
breed that plaintiff cannot reach, that only an exterminator
would be able to reach. Additionally, there are several inmates
in Kasson's SMI (seriously mentally ill) Program who do not
shower or clean their cells for several months at a time,
which exacerbates and feeds the infestation critically.
Defendants refuse to address that particular problem.
Instead, they wait until that inmate's cell is so bad, then
replace him with another inmate, who is forced to try
to clean the cell and reduce the infestation.

5-H

Count VI (cont'd)

Defendant Ryan is aware of this problem but refuses to remedy it. He acknowledges the infestation but states the problem is not a serious problem just because plaintiff is not happy with the amount of "insects" in his cell. He has signed off on the Grievance Appeal in which his subordinates refuse to remedy the infestation.

Defendants Montano and Curran are responsible for the day to day operations of Kasson and for the wellbeing of its prisoners, and both have refused to exterminate the infestation. They are fully aware of the problem.

Defendants Bedrick Williams, Kasson's Chief of Security, and Knight, Kasson's supervisor, are responsible for the health and safety of the unit's prisoners and the daily operations of the unit. Both are well-informed of the problem but refuse to take appropriate measures to exterminate the infestation.

All defendants named in this count are able but unwilling to remedy the problem. Plaintiff has asked them each multiple times to properly address the problem, but they refuse to do so. They have exhibited deliberate indifference to rights of plaintiff by failing to act on information indicating unconstitutional acts are occurring. The unsanitary conditions of Kasson, in this egregious circumstance, has risen to the level of cruel and unusual punishment.

Countless times plaintiff has been subjected to roaches crawling on his body, jumping off the wall, ceiling and desk onto his face. The severity of the infestation and its effects constantly keeps him awake, depriving

## Count VI (cont'd)

him of sleep. The infestation causes the environment to be unsani-
tary. The infestation causes him psychological harm. Numerous
times he has had to throw away personal paperwork and legal
documents because roaches were smashed on them, leaving
roach guts and blood on them. He observes roaches on a daily,
hourly, and oftentimes minute to minute or second to second
basis. He continues to seek mental health treatment for the
hallucinations, which are worsening, and continues to ask
defendants to fix the disgusting problem.

It should also be noted that on or about 9/22/2017 plaintiff
was moved out of cell # 1-B-13, to Able Run, which is about 100
feet down the Wing and much less infested with roaches.
However, on or about 11/14/2016 defendants believed plaintiff "may or
may not have been involved in a physical altercation" with another
inmate, so he was moved back to his former, infested pod in
Baker Run. Plaintiff asserts this move was done as punishment.
The infestation of roaches is still extreme. Defendants, named in this count
continue to refuse to address the problem.

5-J

## E.  REQUEST FOR RELIEF

State the relief you are seeking:

Permanent injunction repealing defendants' prohibition on pornography, adult magazines, nude photos, scantily clad women, and sexually suggestive content. Permanent injunction repealing prohibition on content that does not pose a threat to the safe, secure and orderly operation of the prison (this includes allowing magazines/content that articles brewing beer (like Esquire) but cannot actually be applied in a prison). Court fees and costs. $1,000 for each publication/photo/correspondence excluded under defendants' unconstitutional policy. $75,000 for constitutional injuries. $50,000 for punitive relief. Defendants' must give

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____

DATE

_____

SIGNATURE OF PLAINTIFF

_N/A_

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_N/A_

(Signature of attorney, if any)

_N/A_

_N/A_

_N/A_

_N/A_

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

E. Request for Relief (Cont'd.)

plaintiff all publications/photos/corresponses excluded, contrabanded, and placed in property/storage. Temporary injunction ordering defendants to not destroy plaintiff's excluded materials that were seized and placed in property/storage. Temporary injunction precluding defendants from excluding publications that obviously pose no threat to the prison, such as, but not limited to, Vogue, Elle, Cosmopolitan, Allure, Rolling Stone, ESPN, Esquire, The Philadelphia Trumpet, etc. Temporary injunction precluding defendants from excluding non-nude content and photos of women (or men) who are scantily clad and/or in sexually suggestive attire and/or poses. Temporary injunction precluding defendants from excluding pornographic adult magazines and photos. Temporary injunction precluding defendants from excluding sexually explicit content in text form (i.e., sexually explicit correspondences, personal letters, articles, books, etc. (without photos/images)). Permanent injunction precluding defendants from prohibiting mail from penpal companies/groups/organizations. Injunction ordering defendants to exterminate the cockroach infestation by having exterminator from a company other then the company currently contracted come and spray and eliminate the roaches. Reinstate plaintiff's good-time credits lost due to disciplinary hearings that were unconstitutional. Attorneys fees (if any). $50,000 for compensatory relief. Injunction ordering defendants to lift the ban on incoming publications (books and magazines) to plaintiff. Declatory judgement. Permenent injunction precluded defendants from reinstating any ban on books and magazines, precluding defendants from issuing an order that they be returned to sender.

6-A